```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

```
DANIEL HINES, No. 03-B-0572

          Petitioner,

                    -v-                    05-CV-6447 MAT
                                              ORDER
ISRAEL RIVERA, Superintendent
of Coxsackie Correctional Facility

          Respondent.
```

# INTRODUCTION

On July 31, 2005 petitioner Daniel Hines ("Hines") filed a pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By Indictment Number 2002-23, filed on January 10, 2002, Hines was charged with Burglary in the Second Degree and other crimes. By superseding Indictment Number 2002-136, filed on May 16, 2002, Hines was charged with two counts of Burglary in the Second Degree (Penal Law § 140.25(2)); Rape in the First Degree (Penal Law § 130.35(1)); Sexual Abuse in the First Degree (Penal Law § 130.65(1)); Assault in the Second Degree (Penal Law § 120.05(2)); and Assault in the Third Degree (Penal Law § 120.00(1)). A Huntley hearing was held on May 17, 2002.[1] On May 21, 2002, the court issued a written decision declining to suppress any of Hines' December 4th or 6th statements. See December 5, 2001 City of Elmira Police Department Supporting Deposition of Daniel Hines, attached

---

[1] People v. Huntley, 15 N.Y.2d 72 (1965) (hearing to determine the voluntariness of a defendant's confession to the police).

as Exhibit B to Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus.

On December 20, 2002, following a jury trial, Hines was found guilty of Burglary in the Second Degree (Penal Law § 140.25(2)); Rape in the First Degree (Penal Law § 130.35(1)); Sexual Abuse in the First Degree (Penal Law § 130.65(1)); Assault in the Second Degree (Penal Law § 120.05(2)); and Assault in the Third Degree (Penal Law § 120.00(1)). On March 3, 2003, Hines was sentenced to various concurrent sentences, the longest of which was for a term of seventeen and one-half years imprisonment. On July 1, 2004, Hines' conviction was unanimously affirmed by the Appellate Division, Third Department, and leave to appeal to the New York State Court of Appeals was denied. People v. Hines, 9 A.D.3d 507, 780 N.Y.S.2d 419 (3d Dept. 2004), lv. denied, 3 N.Y.3d 707, 785 N.Y.S.2d 34 (2004). Hines is currently incarcerated at the Coxsackie Correctional Facility pursuant to his judgment of conviction.

The conviction stems from two incidents that occurred at the home of the victim, on December 4 and 6, 2001. The victim met Hines in late 2000 or early 2001 while she worked at a grocery store in Chemung County and, thereafter, they often spent time together. (T. 93-94). The victim stated that the relationship had never involved sexual intimacy and that, on December 4, 2001, when she had rebuffed Hine's sexual advances, he became angry and choked her, leaving bruises on her neck and arms. (T. 108). While Hines acknowledged choking the victim on December 4, he related that they

had been involved sexually since shortly after they first met and that his actions occurred later when the victim made threats against his wife and children. (T. 668-69, 657-58, 664). The victim sought medical attention and she spoke to officers in the Elmira City Police Department regarding the incident. (T. 155-56, 117). Hines was contacted by police by phone on December 4 and 5, 2001 and returned the phone calls, agreeing to voluntarily go to the police station to discuss the incident. Hines gave a statement on December 5 in which he contended that he "snapped" because of the victim's threats against his children. He was not detained following his interview with the police. (T. 672-73; December 5, 2001 Petitioner's statement to the police, attached as Exhibit A to Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus).

According to the victim, she awoke on the morning of December 6, 2001 to find Hines in her bedroom holding a novelty baseball bat. (T. 117-19). He struck her twice on the head with the bat before she could cover her head with a pillow, and he continued striking her through the pillow. (T. 119). Hines expressed anger because the victim had reported the December 4 incident to police. (T. 120). Hines produced a handgun and ordered the victim to remove her underwear. (T. 121). Hines, who was wearing a condom, then forcibly engaged in intercourse with her. (T. 122). He escorted the victim downstairs so he could check a calendar to determine whether her school-aged brother would be home soon. (T. 122-23). Once downstairs, Hines began rubbing his penis against the victim's legs

until he ejaculated, this time without a condom. (T. 127-28). Hines attempted to wipe all the semen off the victim's legs. Id. Hines threatened the victim with harm if she told anyone about the incident and then exited the premises. (T. 128). With respect to the events of December 6, Hines denied any involvement and maintained his innocence. (T. 383). The victim contacted police on December 6, an investigation was commenced and she was transported to a hospital, where a rape kit was administered. (T. 536). Semen found on her thigh was eventually linked, through DNA testing, to Hines. (T. 623, 637-39).

On the evening of December 6, 2001, Hines called the police station seeking to speak with the officer who had interviewed him regarding the December 4 incident. (T. 679). Hines stated on the telephone that he was being falsely accused of rape and also inquired whether there was a warrant for his arrest. Id. The officer who took the call told him he would check to see if there was a warrant. Id. Upon speaking with other officers, it was decided that Hines would be told there was an arrest warrant, even though one had not yet been issued. (T. 374). Hines called back a short time later and the officer told him there was a warrant for his arrest. Hines responded that he would walk to the police station, which he then did. (T. 376). Upon arriving at the station, Hines was read his Miranda rights. (T. 382). Hines then spoke with investigators and maintained his innocence regarding any events of December 6. (T. 385). He was, however, arrested later that evening. (T. 388).

# DISCUSSION

## I. Plaintiff's Claims

In his pro se petition for a writ of habeas corpus, Hines claims that: (1) the County Court erred by refusing to suppress his December 6th statements which were obtained in violation of his Fourth Amendment rights; (2) the guilty verdict on the December 6th offenses, Counts 2-5, was not supported by legally sufficient evidence, or at least was against the weight of the evidence; (3) the evidence was legally insufficient to sustain his conviction for Count 5, Second Degree Assault; and (4) his sentence was excessive. Hines is not contesting his conviction for assault in the third degree, which arose from the events of December 4, 2001.

## II. Exhaustion Requirement

Before examining the merits of petitioner's claims, it is necessary to consider whether Petitioner exhausted his state court remedies. An application for a writ of habeas corpus by a person in the custody of a state will not issue unless the petitioner has exhausted all state court remedies. 28 U.S.C. § 2254(b)(1)(A). To exhaust a claim, a petitioner must present it to the "highest state court from which a decision can be had." Daye v. Attorney General, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc), on remand, 712 F.2d 1566 (2d Cir. 1983), cert. denied, 464 U.S. 1048 (1984); see also

Picard v. Connor, 404 U.S. 270, 275 (1971).[2] Petitioner must also show that his federal claims were exhausted by apprising the state courts of their constitutional nature by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005) (citing Daye, 696 F.2d at 194).

I find that Petitioner has exhausted his Fourth Amendment claim because he raised it before the Appellate Division, when he argued that the County Court erred in refusing to suppress his December 6th statements in violation of his Fourth Amendment rights, thereby presenting the issue in federal constitutional terms. See page 23, May 21, 2002 Appellate Division Brief of Petitioner, attached as Exhibit C to Respondent's Declaration in

---

[2] In Grey v. Hoke, the petitioner argued one claim in his leave to appeal letter to the New York Court of Appeals, and he also attached his Appellate Division briefs, which had raised that issue along with two others. Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.1991). The Second Circuit held that the claims only referred to in his attached briefs were not exhausted. The Court opined that "[t]*he fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned.* The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims. *We decline to presume that the New York Court of Appeals has 'a duty to look for a needle in a paper haystack.'* For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect." Id. (emphasis added & citations omitted). Here, as in Grey, Petitioner merely made a passing reference to his Appellate Division briefs in his leave application. Such an indirect reference is insufficient under Grey and its progeny to put the New York Court of Appeals on notice that it should review both legal sufficiency of evidence claims as well as his excessive sentence claim, and would require state courts to look for a "needle in a paper hay stack" while a petitioner argues "one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim." See Jamison v. Berbary, 2002 WL 1000283, at *18 (S.D.N.Y. May 15, 2002) (citations omitted).

Opposition to Petition for a Writ of Habeas Corpus. Petitioner also raised the Fourth Amendment claim in his letter seeking leave to appeal to the New York Court of Appeals. See page 6, July 8, 2004 letter of Petitioner, seeking leave to appeal to the New York Court of Appeals, attached as Exhibit G to Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus. Therefore, Petitioner presented this claim to the highest state court, and it is exhausted.

According to Respondent, Petitioner failed to raise his insufficient evidence and excessive sentence claims in his letter, through counsel, seeking leave to appeal the Appellate Division's decision. I find that Petitioner has failed to exhaust these claims. Petitioner failed to ask the Court of Appeals to review them. In his leave letter, Petitioner only discussed, and asked the Court of Appeals to review, the Fourth Amendment issue. (Ex. G). Therefore, Petitioner did not present these claims to the highest state court, and they are unexhausted.

Generally, a federal court will not entertain a habeas corpus petition from a state prisoner unless the prisoner has exhausted state court remedies. Picard, 404 U.S. at 275. Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained. Daye, 696 F.2d at 190 n. 3. In addition, a petition that contains both exhausted and unexhausted claims should be dismissed so that the state courts have an opportunity to decide the unexhausted issues. Rose v. Lundy, 455 U.S. 509, 510 (1982).

However, federal courts may deny an application on the merits, notwithstanding a petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). This allows courts to deny habeas petitions that contain unexhausted claims that are deemed patently frivolous. Brown v. State, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005); see also Edkin v. Travis, 969 F. Supp. 139, 140 n. 1 (W.D.N.Y. 1997). Accordingly, I will address petitioner's claims although the state courts have not had an opportunity to address all of them.

**III. Procedural Default**

Respondent submits that although Petitioner's insufficient evidence and excessive sentence claims are unexhausted, the petition should not be returned to state court. Petitioner has already had one appeal, and one application for leave to appeal to the Court of Appeals, to which he is entitled. See Grey, 933 F.2d at 120-21; MacKenzie v. Portuondo, 208 F.Supp.2d 302, 312-13 (E.D.N.Y. 2002); 22 N.Y.C.R.R. §§ 600.8(b), 500.10. As a result of Petitioner not raising these claims in his appeal or application for leave to appeal to the Court of Appeals, these claims are procedurally defaulted.

This Court also finds that Petitioner would be procedurally barred from raising these claims in the New York Court of Appeals. As the Second Circuit explained in Grey v. Hoke, here, New York procedural rules plainly bar Petitioner from attempting to raise claims he raised before the Appellate Division, but did not raise in his application for leave to appeal to the New York Court of Appeals. Petitioner cannot again seek leave to appeal these claims

to the New York Court of Appeals because he has made the one request for leave to appeal to which he is entitled. <u>See</u> N.Y. Court Rules § 500.10(a). Collateral review of these claims is also barred because the issues were previously determined on the merits on direct appeal. <u>See</u> N.Y.Crim. Proc. Law § 440.10(2)(a); <u>see</u> <u>also</u> N.Y.Crim. Proc. Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review).

Therefore, the Petitioner's claims of legal sufficiency and excessive sentence are procedurally defaulted and this Court may consider their merits only if the petitioner shows: 1) cause for the default and actual prejudice; or 2) that the failure to consider the claim will result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime. <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001).

The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that Petitioner received constitutionally ineffective assistance of counsel. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). Petitioner has not established cause for his failure to alert the Court of Appeals of his claim and, therefore, this Court need not consider whether Petitioner has been prejudiced by his procedural default. <u>See</u> <u>Minigan v. Donnelly</u>, 2007 WL 542137, at 11 (W.D.N.Y. Feb. 16, 2007) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n. 43 (1982) ("Since we conclude that these respondents lacked cause for their default, we

do not consider whether they also suffered actual prejudice."); McCleskey v. Zant, 499 U.S. 467, 502 (1991).

Having failed to show cause for his default, in order to have his claims heard by this Court, Petitioner must show that a miscarriage of justice would occur if the claims were not heard because he is actually innocent. Aparicio, 269 F.3d at 90. However, "credible claims of actual innocence are 'extremely rare.'" Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). To establish actual innocence, a "petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 321-22 (1995)). Given the physical evidence and testimony of the victim, medical personnel and police, I find that it is not more likely that a reasonable juror would not have convicted Petitioner of his crimes. Therefore, Petitioner cannot show that a miscarriage of justice would occur should his insufficient evidence and excessive sentence claims were procedurally barred.

Since Petitioner lacks cause for his default and has failed to establish that a miscarriage of justice would occur if his claims were not heard because of his innocence, both his insufficient evidence and excessive sentence claims [claims not raised before the Court of Appeals] must, therefore, be dismissed without reaching the merits. Murray, 477 U.S. at 492; Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

## IV. Weight of the Evidence

The Court turns to Petitioner's alternative claim that the guilty verdict on the December 6th offenses (Counts 2-5), was against the weight of the evidence. This claim derives from C.P.L. §470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y.Crim. Proc. Law §470.15(5). Thus, a "weight of the evidence" argument presents only a state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. §2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence..."), aff'd, 263 U.S. 255 (1923); Garrett v. Perlman, 438 F.Supp.2d 467,

470 (S.D.N.Y.2006) (same); Garbez v. Greiner, 2002 WL 1760960, at *8 (S.D.N.Y.2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."). Accordingly, I find that Petitioner's claim that his verdict was against the weight of the evidence is a state law claim that does not present a federal constitutional issue cognizable on habeas review. Thus, the Petitioner is not entitled to habeas relief on this ground.[3]

## IV. Fourth Amendment Claim

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); see also Williams

---

[3] Moreover, the excessive sentence claim is also not cognizable on federal habeas review because it presents solely an issue of state law. In addition, as long as the sentence is within statutory limits (Petitioner was sentenced to various concurrent determinate sentences, the longest of which was for a term of seventeen and one-half years imprisonment for First Degree Rape), there is no basis for a federal constitutional claim.

v. Taylor, 529 U.S. 362, 375-76 (2000). An "adjudication on the merits" is substantive, rather than a procedural, resolution of a federal claim. Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2000). Federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Cupp v. Naughten, 414 U.S. 141, 146 (1970).

Petitioner's claims were adjudicated on the merits by the Appellate Division, Third Department. People v. Hines, 9 A.D.3d 507, 780 N.Y.S.2d 419.

### B. Petitioner's Fourth Amendment Claim

Hines contends that the police violated his constitutional rights, under the Fourth Amendment of the United States Constitution and Article 1, §12 of the New York Constitution, to be free of unreasonable searches and seizures, when the police misrepresented to him that they had a warrant for his arrest in order to induce him to leave his home and go to the police station. See page 3, September 14, 2005 Current Petition for a Writ of Habeas Corpus before this Court, attached as Exhibit I to Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus. Petitioner also presented this argument on direct appeal. (Ex. C at 23). Respondent contends that Petitioner cannot dispute that he had a full and fair opportunity to litigate this

issue before the state courts, and therefore habeas relief must be denied.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Stone v. Powell, 428 U.S. 465, 481-482 (1976). Although Stone involved physical evidence, the Supreme Court subsequently held that this standard also applies to a Fourth Amendment challenge to a confession, if the statements made were voluntary and obtained in accordance with Miranda v. Arizona, 384 U.S. 436 (1966). See Cardwell v. Taylor, 461 U.S. 571, 572-73 (1983); see also Dawson v. Donnelly, 111 F.Supp.2d 239, 247 (W.D.N.Y. 2000) (citing Stone and Cardwell, this Court dismissed a challenge to a confession). Petitioner was read his Miranda rights at the police station and voluntarily spoke with the police, therefore Stone applies. (T. 382).

The Second Circuit has held that all Stone requires is that the State provide the petitioner with the opportunity to litigate a Fourth Amendment claim. See McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either: (1) that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated; or (2) that the State had such procedures in place, but that the petitioner was unable to avail himself of those procedures

"because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); see also Ferron v. Goord, 225 F.Supp.2d 127, 130-32 (W.D.N.Y. 2003) (citing Stone and Capellan, this Court rejected a Fourth Amendment challenge to a search warrant).

Petitioner, whose habeas corpus petition arguments were already stated in his direct appeal, does not contend that New York failed to provide appropriate corrective procedures to address his Fourth Amendment allegations. In order to satisfy the second prong (that there was an "unconscionable breakdown" in the process), Petitioner must show that the state courts "failed to conduct a reasoned method of inquiry into relevant questions of fact and law." Capellan, 975 F.2d at 71. The focus of this Court must be on the corrective process of the state court, not the outcome of the procedures used. Id.

Petitioner utilized these corrective procedures by moving to suppress his statements to the police, as a result of which he was granted the suppression hearing. Petitioner moved to suppress all of his December 6, 2001, statements and the resulting Huntley hearing and Decision and Order, (Ex. B), constituted a "corrective procedure" to redress the alleged Fourth Amendment violations. Petitioner also re-litigated the Fourth Amendment issue on direct appeal. The Appellate Division held that Petitioner's December 6, 2001, statements should not be suppressed because the police did not enter or arrest him in his home and he did not leave his house

due to coercive police conduct. People v. Hines, 780 N.Y.S.2d at 419.

I find that Petitioner utilized New York State corrective procedures to litigate his Fourth Amendment claims, and that there were no "unconscionable breakdowns" in those procedures. Petitioner therefore received an opportunity for full and fair litigation of his Fourth Amendment claim in state court, and he is now barred from further review of this claim in this habeas corpus proceeding.

**CONCLUSION**

For the reasons stated above, Daniel Hines' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Hines has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. §2253. The Court further certifies that pursuant to 28 U.S.C. §1915(a)(3), any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: July 8, 2009
Rochester, New York